RECEIVED SEP 06 2022 PRO SE OFFICE

ORIGINAL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

MARIO CAGGIANO,

           Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; CARMEN AMADOR, Principal of Herbert S. Eisenberg Middle School, in her official and individual capacity; AUDREY HOUSTON, Assistant Principal of Herbert S. Eisenberg Middle School, in her official and individual capacity; EVAN RABINOWITZ Assistant Principal of Herbert S. Eisenberg Middle School, In His official and individual capacity,

           Defendants.

---

**COMPLAINT**

CV 22-3853
22-Civ.-____

**JURY TRIAL DEMANDED**

KOVNER, J

MERKL, M.J.

---

Plaintiff MARIO CAGGIANO Pro Se, as and for his Complaint, against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff further brings this action pursuant to 42 U.S.C. § 1983 based on retaliation for his First Amendment protected speech for his union activities as a United Federation of Teachers ("UFT") Chapter Leader while employed as a teacher for the New York City Department of Education ("NYCDOE") at Herbert S. Eisenberg Middle School ("the School"). Plaintiff further brings this action seeking monetary and equitable relief based upon Defendants' violations of the New York State Human Rights Law, N.Y. Exec Law § 296 ("NYSHRL"); and the New

1

York City Human Rights Law, N.Y.C. Administrative Code §§8-101 *et. seq.* ("NYCHRL"), based on discrimination due to age.

2. The conduct complained of in this action involves Defendants' discriminatory and retaliatory conduct against Plaintiff as well as favorable treatment exhibited on behalf of Defendants towards similarly situated younger gym teachers at the School.

3. Additionally, the conduct complained of in this action involves Defendants' retaliation, and interference with Plaintiff's exercise of his First Amendment rights as the UFT chapter leader after and while advocating on behalf of teachers and students at the School. The retaliatory conduct following protected activity includes, but is not limited to, the issuance of adverse performance ratings and evaluations, being subjected to a number of OSI and SCI investigations, disciplinary summons and letters to his employment file, and loss of eligibility for overtime and other per session opportunities, which together constitute adverse employment actions.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

6. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

7. Plaintiff Mario Caggiano is a resident of Kings County and the State of New York.

8. At all times relevant herein, Defendant New York City Department of Education is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*

9. At all times relevant herein, Defendant Carmen Amador was the Principal of Herbert S. Eisenberg Middle School, a middle school in Brooklyn, within the New York City Department of Education, and is sued in her official and individual capacity.

10. At all times relevant herein, Defendant Audrey Houston was the Assistant Principal of Herbert S. Eisenberg Middle School, a middle school in Brooklyn, within the New York City Department of Education, and is sued in her official and individual capacity.

11. At all times relevant herein, Defendant Evan Rabinowitz was the Assistant Principal of Herbert S. Eisenberg Middle School, a middle school in Brooklyn, within the New York City Department of Education, and is sued in his official and individual capacity.

## STATEMENT OF FACTS

12. I have been a teacher within Defendant NYCDOE since September of 1996 and am presently tenured.

13. Beginning in 2015, I have taught at Herbert S. Eisenberg Middle School, designated IS 303. The School shares a building with K344, Rachel Carson High School for Coastal Studies, and Coney Island Prep Charter School and are located at 501 West Ave, Brooklyn, NY 11224.

14. Beginning in 2015, I was elected UFT union chapter leader for the School. I continued to serve as chapter leader throughout the 2015-2016, 2016-2017, 2017-2018 school years.

15. During these years, I do not recall having ever filed a grievance or operational complaint. In this same time span, my professional relationship with Principal Amador, AP Houston, and AP Rabinowitz was very strong and I never once received a disciplinary letter to file or poor performance ratings. In fact, I received 32 exemplary or commendatory letters to file, such as attending a teacher recruitment event on behalf of the school or being in charge of the Middle School District open house which was held at I.S. 303.

16. In addition to my role as a professional educator within the NYCDOE, from 2015-2019 I regularly worked with the CHAMPS after-school program.

17. As a result of the COVID-19 pandemic, the CHAMPS program was not administered for the 2019-2020 school year. This was the first year at the School I did not work with the CHAMPS program.

18. While employed at the School from 2015-2019, I consistently received "Effective" ratings and letters of recommendation from my administration, including Principal Amador. In addition to my "Effective" ratings, throughout my time at the School, I was afforded the opportunity to facilitate the Kiwanis Builders club and the NYPD Explorers program at the School, for which I received praise from Principal Amador and other members of the administration of the School.

**Retaliation Due to Union Activity**

19. Beginning in 2019 and continuing up and until 2022, I became very outspoken in my duties as union Chapter leader, reporting, among other things, irregular staffing situations, student Individualized Education Plan ("IEP") noncompliance, mismanagement of the school, health and safety violations, and even miscalculation of payments owed to teachers for additional coverages assigned to them during remote instruction during the COVID-19 pandemic. On one

4

such occasion, I even brought my concerns regarding improper payment for class coverages directly to Isabel DiMola, Superintendent of District 21, in which the School is located.

20. On December 4, 2021, less than two years after I became outspoken in my role as union chapter leader at the School, Principal Amador called me into her office and informed me that I was being reassigned from my duties at the School and was to report to 100 Gold Street in Manhattan.

21. During this same conversation, Principal Amador told me that she could not provide any additional details with respect to my reassignment to Gold Street.

22. Following this notice, I filed a NYCDOE FOIL request in or about January 2022 to see if I could obtain any information pertaining to my reassignment.

23. On March 21, 2022, the NYCDOE FOIL office provided me a letter in response to my FOIL request which indicated that from September 2021-present, I had been the subject of seven (7) Office of Special Investigation ("OSI") investigative cases initiated by my school administration against me.

24. Prior to receiving these FOIL request results, I was only aware of one OSI investigation against me, in which AP Audrey Houston falsely alleged that on October 26, 2021, I was sleeping during after-school parent engagement time in a locked office. I was not previously aware of these six other OSI cases.

25. After receiving this information through FOIL, on May 24, 2022, I asked a UFT representative, Yelena Siwinski, to provide me with the dates and contents of operational complaints and grievances I had filed or caused to be filed against the administration, which she did shortly thereafter.

26. Additionally, on June 1, 2022, I asked Robert Levine, a UFT representative, to provide me with the dates the OSI investigations were commenced, which he did.

27. Upon comparison of the information provided to me by UFT Representative Yelena Siwinski and Robert Levine, I noticed that the dates I made operational complaints or filed grievances with my union against the administration closely coincided with the dates OSI investigations the school administrators, including Principal Amador and her Assistant Principals, launched against me.

28. For example, on November 5, 2020, I filed an operational complaint regarding the remote class size overages at the school in which classes were far in excess of the number of allowable students per remote class. As a result of my operational complaint, in an email dated April 7, 2021, District 21 Superintendent Isabel DiMola confirmed that Principal Amador was aware of and had to make retroactive payments to those teachers who taught oversized classes as well as future payments to any teachers who would continue to teach classes that remained oversized.

29. On April 7, 2021, I filed another operational complaint against the school administration regarding the type of instruction Principal Amador required teachers to provide in violation of a UFT-DOE agreement during the COVID-19 pandemic.

30. In retaliation, less than a month later, on May 3, 2021, I was subjected to an OSI investigation filed against me by the administration. I also received poorly rated "Developing" observation reports from Principal Amador on May 14, 2021, and another "Developing" rating from AP Houston on June 29, 2021, even though I was consistently rated "Effective" and even "Highly Effective" through June 2019. I also was denied my preferences for classes for the 2021-22 school year in September 2021, which I had submitted in June 2021, the first time this had occurred at the school. I filed a grievance about the denial of my preferences in late September 2021, which resulted in a change in my schedule with no eighth-grade classes assigned to me.

31. On October 21, 2021, I filed an operational complaint about the lack of protocols and unsafe conditions in the school, in which I was very vocal about students being unsupervised in classrooms and about a dangerous fight occurring in the hallway, regarding the morning arrival of students. On October 24, 2021, I also filed an operational complaint regarding Physical Education teachers having to create lesson plans for grades 6, 7, and 8.

32. Just two days later, on October 26, 2021, AP Audrey Houston made a report to SCI against me, and the matter was referred to OSI on November 24, 2021. AP Houston allegedly observed me sleeping during after-school time dedicated to parent engagement through the locked PE office door small window. I learned of this investigation during a May 12, 2022, disciplinary meeting. AP Houston ultimately gave me a retaliatory disciplinary letter, dated May 25, 2022, about this incident, the first disciplinary letter I ever received at this school.

33. I was also the subject of yet another OSI investigation reported against me by the school administration on November 15, 2021. I am only aware of this investigation through my FOIL request and subsequent communications with Mr. Levine from the UFT.

34. On December 9, 2021, after my DOE reassignment from the school, I made an operational complaint against the school on behalf of teacher mentors who were not being paid accordingly.

35. Additionally, on January 13, 2022, I filed an operational complaint based on Principal Amador refusing to pay teachers after school per session pay as per the UFT DOE.

36. Principal Amador was aware of both the December 9, 2021, operational complaint I filed regarding teacher mentor pay, as well as the January 13, 2022, operational complaint for teachers who had not received after school per session work payment, because these complaints required her to retroactively compensate these teachers from the school budget.

7

37. On February 10, 2022, I filed another operational complaint on behalf of teachers who performed asynchronous work for students out with COVID without being paid for it.

38. Shortly after I made this complaint, I was subjected to another OSI investigation on April 12, 2022. This OSI investigation came despite the fact that I had been reassigned from I.S. 303 in nearly 5 months. I am only aware of this investigation as a result of inquiring with Mr. Levine and his responsive emails indicating the dates of OSI investigations.

39. On April 6, 2022, I received an SCI investigatory report which substantiated my alleged failure to supervise students. Only upon reading the report did I learn that AP Houston made three complaints against me. Two of the reports AP Houston made to SCI pertained to student incidents which are ordinary in the course of PE class. The first involved a student who fell and I sent to the nurse. The student stated it looked like he was looking down on a phone at his desk. The second was a female student who alleged she had been hit in the head with a basketball by another male student. The SCI report included no dates of when the allegations were made or investigated.

40. Instead of speaking to me or calling me in for a conference, AP Houston called in an allegation that I was late to a remote class. I was the only teacher the administration called OSI about for being late to a remote class.

41. Upon information and belief, there is at least one other outstanding OSI investigation of which I would have been unaware if not for my FOIL request, as well as two (2) Office of Equal Employment Opportunity ("OEO") investigations against me that are currently ongoing.

42. Furthermore, on June 13, 2022, I found out that I was not selected to work summer school. I am the most senior Physical Education teacher within I.S. 303 and I have never previously been denied the opportunity to work summer school.

43. In addition to the poor performance ratings, disciplinary letters to file, and reassignment out of the school, during the time that I was vocal in my duties as union chapter leader, Principal Amador made a number of comments demonstrating her anti-union animus.

44. On or about March 28, 2021, I raised concerns to Principal Amador during a School Leadership Team ("SLT") meeting. At this meeting I spoke up about a math class that was being taught by a social studies teacher. I asked why two of the Assistant Principals who are licensed in math could not teach this course.

45. At a monthly Special Education meeting, on or about February 5, 2021, with Principal Amador, School Psychologist Jackie Paduano, AP Audrey Houston, and school counselor Brett Dobin, present, I spoke up against Principal Amador's request for school psychologist Jackie Paduano to change a student's IEP. Upon information and belief, despite my concerns, Jackie made the changes Principal Amador requested.

46. On or about September 24, 2021, Principal Amador said to me "I'm vested," implying that even if the conduct I complained about her as UFT Chapter leader resulted in her termination, she would still receive her pension.

47. Additionally, on or about October 6, 2021, Principal Amador made another comment stating, "the UFT gets its say, not its way." Once again this comment clearly depicts Principal Amador's anti-union sentiment, and lends support to the fact that I was retaliated against as a result of my status as a vocal UFT chapter leader.

**Discrimination on the Basis of Age**

48. In addition to the retaliatory treatment I have faced as a result of my status as chapter leader, while at the School I also noticed that I was treated less well than Mr. Egzon

Gjonbalaj, a younger long-term substitute teacher who often covered physical education classes within the School.

49. I am presently 50 years old, born on April 18, 1972.

50. Upon information and belief, Mr. Gjonbalaj was not given poor disciplinary ratings such as me. Mr. Gjonbalaj also was not subjected to numerous frivolous investigations alleging misconduct resulting in disciplinary letters to file such as I was. In three years as a sub Dean, despite never teaching PE in the school, he was given three years credit as a PE teacher.

51. In addition, on or about June 15, 2022, while reviewing the School's Excessing Seniority List, I noticed that I was not listed on the school roster at all. Instead, Mr. Gjonbalaj was listed as a Physical Education teacher on the roster. This list details the staff within the school and their respective seniority within the School. As I am still assigned to the School, despite my reassignment, this appears to be an attempt by Defendants to alter my seniority status.

52. I believe that not only has Mr. Gjonbalaj been treated better than myself but I also believe that the discriminatory and retaliatory treatment I experienced in the form of poor ratings, disciplinary letters to file, and frivolous disciplinary investigations which ultimately led to my removal from the school was done in an attempt to replace me with a younger, less senior teacher.

53. To date, I am still reassigned from the School.

54. Moreover, since my reassignment, as a result of the retaliatory and discriminatorily motivated poor ratings, investigations, and disciplinary letters I have been subjected to, I am unable to work the CHAMPS after-school program, as well as any other per-session opportunities.

55. Finally, in addition to the financial damage resulting from Defendants' retaliatory and discriminatory conduct, I have also suffered damage to my professional career and reputation as a result of being removed from my position at the School.

## FIRST CLAIM FOR RELIEF

### (Violation of 42 U.S.C. Section 1983
### First Amendment Retaliation against all Defendants)

56.     I repeat and reallege all the preceding paragraphs of this complaint, as if fully set forth herein.

57.     Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section 1983, by retaliating against me for advocating for other staff members of the school as well as students as a Union Chapter Leader in violation of my First Amendment protected speech.

58.     I was speaking as a citizen on a matter of public concern in a number of instances such as when I filed a complaint on November 5, 2020, regarding class size which exceeded limits. Additionally, on October 21, 2021, I filed another complaint pertaining to lack of protocol for the morning arrival of students. I was also speaking as a citizen on a matter of public concern when I spoke up about teachers teaching out of license and when I spoke up against changing a student's IEP. These complaints were not made pursuant to my position as physical education teacher or chapter leader, instead, I made these complaints to address the quality of education and safety provided to the students of the School.

59.     Defendants took adverse employment actions against me in a number of ways which include but are not limited to, subjecting me to multiple investigations, disciplinary letters to file, and poor performance reviews making me ineligible for summer school work and per session opportunities.

60.     Ultimately, as a result of the investigations, disciplinary letters, and poor performance reviews I was subjected to, on December 4, 2021, I was reassigned out of the school to 100 Gold Street in Manhattan pending investigations.

61. As a proximate result of Defendants' retaliatory actions against me, I have suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to my professional reputation and potential loss of employment, in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
**(Violation of the New York State Human Rights Law
Hostile Work Environment on the Basis of Age against the Individual Defendants)**

62. I repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

63. I am over forty years of age and thus protected by the NYSHRL.

64. I have been treated less well than my similarly situated, younger counterpart at the School. Specifically, I have received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued to be pervasively and continuously for the past two-plus years.

65. I have at all times performed my duties satisfactorily and in a similar fashion to my younger counterpart.

66. I have also had my seniority status tampered with.

67. Upon information and belief, Defendants have undertaken a constant and pervasive practice of targeting me in an attempt to reassign me from the School and replace me with a younger counterpart.

68. As a proximate result of Defendants' discriminatory actions against me, I have suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress,

12

mental and physical anguish and suffering, and damage to my professional reputation and potential loss of employment, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Violation of the New York City Human Rights Law
### Hostile Work Environment on the Basis of Age against the Individual Defendants)

69. I repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

70. I am over forty years of age and thus protected by the NYCHRL.

71. I have been treated less well than my similarly situated, younger counterpart at the School. Specifically, I have received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued to be pervasively and continuously for the past two-plus years.

72. I have at all times performed my duties satisfactorily and in a similar fashion to my younger counterpart.

73. I have also had my seniority status tampered with.

74. Upon information and belief, Defendants have undertaken a constant and pervasive practice of targeting me in an attempt to reassign me from the School and replace me with a younger counterpart.

75. As a proximate result of Defendants' discriminatory actions against me, I have suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to my professional reputation and potential loss of employment, in an amount to be determined at trial.

### JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows:

A.  A declaratory judgment that Defendant District is in violation of 42 U.S.C. § 1983 based on retaliation for First Amendment protected speech;

B.  A declaratory judgment that Defendants are in violation of New York State Human Rights Law;

C.  A declaratory judgment that Defendants are in violation of New York City Human Rights Law;

D   Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to 42 U.S.C. § 1983, and New York State and City Human Rights Laws;

F.  Awarding Plaintiff costs; and

G.  Such other and further relief as to this Court may deem necessary, just and proper.

Dated:   New York, New York
         September 6, 2022

By: _____
Mario Caggiano
Pro Se
1384 82nd Street
Brooklyn, NY 11228
(917) 854-0698