No. 22-cv-03853 (RPK) (TAM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO CAGGIANO,

                                                    Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; CARMEN AMADOR, Principal of Herbert S. Eisenberg Middle School, in her official and individual capacity; AUDREY HOUSTON, Assistant Principal of Herbert S. Eisenberg Middle School, in her official and individual capacity; EVAN RABINOWITZ Assistant Principal of Herbert S. Eisenberg Middle School, In His official and individual capacity,

                                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-146*
*New York, New York  10007*

*Of Counsel:  Karen K. Rhau*
*Tel.:  (212) 356-2475*
*Matter No.:  2022-056196*

Date of Service: November 3, 2022

Danielle M. Dandrige,
Karen K. Rhau,
    Of Counsel.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ....................................................................... 2

      A.    Plaintiff's Union Activities and Alleged Retaliation ....................................................................... 2

      B.    Plaintiff's Alleged Hostile Work Environment on the Basis of Age ................................................. 5

ARGUMENT

      POINT I

           PLAINTIFF'S STATE AND CITY LAW CLAIMS MUST BE DISMISSED FOR FAILING TO FILE A NOTICE OF CLAIM ...................................... 5

      POINT II

           PLAINTIFF'S SHRL AND CHRL CLAIMS ARE TIME BARRED IN PART. ..................................... 6

      POINT III

           PLAINTIFF'S SHRL AND CHRL CLAIMS ARE BARRED BY THE ELECTION OF REMEDIES DOCTRINE. ......................................................... 6

      POINT IV

           PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT RABINOWITZ ................. 9

      POINT V

           PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1983 .................................... 9

           A.    Plaintiff's 42 U.S.C. § 1983 Retaliation Claim Based On The First Amendment Fails ................. 9

                 (i)    Plaintiff's Speech is Unprotected ............................. 9

**Page**

      (ii)   Lack of Adverse Employment Action ................................... 12

      (iii)  Lack of A Causal Connection .................................................. 13

B.    Plaintiff's Claims Against The BOE Under 42 U.S.C. § 1983 Must Be Dismissed For Failure To Plead A Municipal Policy Or Practice........................................15

C.    The Individually Named Defendants are Entitled to Qualified Immunity Regarding Plaintiff's First Amendment Retaliation Claim ...............................16

POINT VI

PLAINTIFF FAILS TO ALLEGE A HOSTILE WORK ENVIRONMENT CLAIM UNDER THE SHRL OR CHRL ................................................................................19

CONCLUSION.................................................................................................. 21

## TABLE OF AUTHORITIES

__Cases__                                                                                                                      __Pages__

Agosto v NY City Dept. of Educ.,
    982 F3d 86 (2d Cir. 2020).........................................................................................................18

Amorosi v. S. Colonie Indep. Cent. Sch. Dist.,
    9 N.Y.3d 367 (2007) ...............................................................................................................6

Arroyo-Horne v City of NY,
    No. 16-CV-03857 (MKB), 2018 U.S. Dist. LEXIS 151183
    (E.D.N.Y. Sep. 5, 2018)..........................................................................................................15

Ashcroft v. al-Kidd,
    563 U.S. 731 (2011).........................................................................................................16, 17

Benson v N. Shore-Long Is. Jewish Health Sys.,
    482 F Supp 2d 320 (E.D.N.Y. 2007) .......................................................................................8

Birch v. City of New York,
    184 F. Supp. 3d 21 (E.D.N.Y. 2016),
    *aff'd on other grounds*, 675 Fed. Appx. 43 (2d Cir. 2017)...................................................17

Carrington v. New York City Human Res. Admin.,
    No. 19 Civ. 10301, 2020 U.S. Dist. LEXIS 83838 (S.D.N.Y. May 12, 2020)......................19

Carroll v. U.P.S.,
    No. 00-7037, 2000 U.S. App. LEXIS 21268 (2d Cir. 2000) ....................................................8

Cartier v. Lussier,
    955 F.2d 841 (2d Cir. 1992)....................................................................................................17

Collymore v New York,
    767 F App'x 42 (2d Cir. 2019) ...............................................................................................13

Coppedge v. New York City Sales, Inc.,
    No. 10 Cv. 6449 (BSJ)(JLC) 2011 U.S. Dist. LEXIS 104231 (S.D.N.Y. 2011).....................8

EEOC v. Bloomberg L.P.,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013).....................................................................................20

Freud v NY City Dept. of Educ.,
    No. 1:21-cv-2281 (MKV), 2022 U.S. Dist. LEXIS 54353
    (S.D.N.Y. Mar. 25, 2022) .........................................................................................................6

Giacalone v. Abrams,
    850 F.2d 79 (2d Cir. 1988)......................................................................................................17

**Cases**                                                                                      **Pages**

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)........................................................................................................18

Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009).......................................................................9

Jeune v. Crew,
    No. 16 Civ. 1107, 2017 U.S. Dist. LEXIS 161739 (E.D.N.Y. Sept. 29, 2017)......................14

Lane v. Franks,
    573 U.S. 228 (2014).........................................................................................................16

Lewis v. Cowen,
    165 F.3d 154 (2d Cir. 1999)...........................................................................................17

Looney v. Black,
    702 F.3d 701 (2d Cir. 2012).........................................................................................17

Luna v NYC Taxi & Limousine Commn.,
    No. 21-CV-1408 (DG) (PK), 2022 U.S. Dist. LEXIS 161704
    (E.D.N.Y. Sept. 7, 2022)...........................................................................................7, 8

Massaro v NY City Dept. of Educ.,
    481 F App'x 653 (2d Cir. 2012)...................................................................................11

Mauro v NY City Dept. of Educ.,
    No. 19-CV-04372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379
    (S.D.N.Y. Apr. 29, 2020)..............................................................................................20

McCullough v. Wyandanch Union Free Sch. Dist.,
    187 F.3d 272 (2d Cir. 1999).........................................................................................17

Micillo v NY City Dept. of Educ.,
    No. 14 Civ. 00943 (LAK) (GWG), 2015 U.S. Dist. LEXIS 12321
    (S.D.N.Y. Feb. 2, 2015).................................................................................................11

Missel v County of Monroe,
    351 F. App'x 543 (2d Cir 2009) ...................................................................................15

Mitchell v. Macy's, Inc.,
    No. 17 CV 1485 (AT) (SN), 2018 U.S. Dist. LEXIS 165613
    (S.D.N.Y. Sept. 25, 2018)...............................................................................................9

Monell v Dept. of Social Servs.,
    436 US 658 (1978).........................................................................................................16

**Cases**                                                                            **Pages**

Montero v City of Yonkers,
   890 F.3d 386 (2d Cir. 2018)..............................................................17, 18

Moodie v. Fed Reserve Bank of New York,
   58 F.3d 879 (2d Cir. 1995)......................................................................7

Ochoa v. N.Y.C. Dep't of Educ.,
   No. 20-CV-9014 (ALC), 2021 U.S. Dist. LEXIS 224901
   (S.D.N.Y. Nov. 22, 2021)........................................................................6

Pavone v Puglisi,
   353 F App'x 622 (2d Cir. 2009).............................................................14

Payson v Bd. of Educ. of Mount Pleasant Cottage Sch.,
   No. 14 Civ. 9696 (JCM), 2017 U.S. Dist. LEXIS 154296
   (S.D.N.Y. Sept. 20, 2017)................................................................12, 13

Philbert v City of NY,
   No. 21 Civ. 3119 (PAE), 2022 U.S. Dist. LEXIS 3997 (S.D.N.Y. Jan. 7, 2022).....................8

Raymond v. City, of N.Y.,
   317 F. Supp. 3d 746 (S.D.N.Y. 2018)....................................................15

Rivera v City of NY,
   No. 1:16-cv-9709-GHW, 2019 U.S. Dist. LEXIS 8601
   (S.D.N.Y. Jan. 17, 2019)........................................................................15

Robinson v NY City Dept. of Educ.,
   No. 20-CV-8175 (VSB), 2021 U.S. Dist. LEXIS 181134
   (S.D.N.Y. Sept. 22, 2021)................................................................13, 15

Shara v Maine-Endwell Cent. Sch. Dist.,
   46 F.4th 77 (2d Cir. 2022) ..........................................................9, 10, 11, 12

Tortorici v. Bus-Tev, LLC,
   No. 17-cv-7507 (PAC) (KHP), 2021 U.S. Dist. LEXIS 120627
   (S.D.N.Y. June 28, 2021)........................................................................19

Weintraub v Bd. of Educ.,
   593 F3d 196 (2d Cir. 2010).....................................................................11

Williams v. City of N.Y.,
   916 F. Supp. 2d 517 (S.D.N.Y. 2013)......................................................7

Williams v. New York City Housing Auth.,
   61 A.D.3d 62 (1st Dept. 2009)................................................................20

**Cases**                                                                                   **Pages**

Williams v Victoria's Secret,
    No. 15 Civ. 4715 (PUG) (JLC), 2017 U.S. Dist. LEXIS 45813
    (S.D.N.Y. Mar. 28, 2017) ..................................................................................19

**Statutes**

42 U.S.C. § 1983 ...................................................................................1, 2, 9, 15

Fed. R. Civ. P. 12(b) ............................................................................................1

N.Y. Educ. Law §3813(2-b) ................................................................................6

N.Y. Exec. Law § 300 ........................................................................................19

New York Education Law §3813(1) ..................................................................5, 6

NYC Admin. Code § 8-107 *et seq.* .................................................1, 2, 6, 8, 19, 20

NYS Executive Law §§ 296, *et seq.* ...................................................................1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MARIO CAGGIANO,

                                   Plaintiff,        22-cv-03853 (RPK) (TAM)

                    -against-
NEW YORK CITY DEPARTMENT OF
EDUCATION; CARMEN AMADOR, Principal of
Herbert S. Eisenberg Middle School, in her official
and individual capacity; AUDREY HOUSTON,
Assistant Principal of Herbert S. Eisenberg Middle
School, in her official and individual capacity;
EVAN RABINOWITZ Assistant Principal of
Herbert S. Eisenberg Middle School, In His official
and individual capacity,

                                  Defendants.
-------------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS
THE COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiff, a tenured physical education teacher employed by the Defendant Board
of Education of the City School District of the City of New York ("BOE") (also known as and
sued herein as the "New York City Department of Education"), commenced this action pursuant
to 42 U.S.C. § 1983 ("§ 1983"), the New York State Executive Law §§ 296, *et seq.* ("SHRL");
and the New York City Administrative Code §§ 8-107 *et seq.* ("CHRL") alleging that he was
retaliated against for exercising his First Amendment right to speech and that he was subjected to
a hostile work environment based on his age.  Plaintiff's complaint fails however, as he has not
engaged in protected speech and aside from his conclusory assertions, there is no factual support
for his age discrimination claims under the SHRL and CHRL.

As set forth more fully below, Defendants move pursuant to Fed. R. Civ. P. 12(b),
to dismiss the Complaint on the following grounds: (1) Plaintiff's SHRL and CHRL claims
against the BOE should be dismissed for Plaintiff's failure to file a notice of claim; (2) Plaintiff's

claims under the SHRL and CHRL are time-barred, in part; (3) Plaintiff's SHRL and CHRL claims are barred by the election of remedies doctrine; (4) Plaintiff has failed to attribute any discriminatory actions to Defendant Rabinowitz; (5) Plaintiff has failed to state a plausible claim under 42 U.S.C. § 1983; (6) Plaintiff has failed to plead a First Amendment retaliation claim; (7) all claims asserted against the individual defendants in their individual capacities must be dismissed on the basis of qualified immunity; and (8) Plaintiff has failed to state a plausible claim under the SHRL and the CHRL for a hostile work environment.  Accordingly, Defendants request that Plaintiff's Complaint be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

Plaintiff Mario Caggiano began his employment with the BOE in September of 1996 and is presently tenured.  See ECF Dkt. No. 1 at ¶ 12.  Plaintiff began work at the Herbert S. Eisenberg Middle School, I.S. 303 in 2015.  Id. at ¶ 13.  At the time of the allegations in Plaintiff's complaint, Defendant Amador was the principal at I.S. 303 and Defendants Houston and Rabinowitz were Assistant Principals.  Id. at ¶ 15.

### A.    Plaintiff's Union Activities and Alleged Retaliation

In 2015, Plaintiff was elected the United Federation of Teachers ("UFT") union chapter leader for I.S. 303.  Id. at ¶ 14.  He continued to serve as chapter leader through the 2015-2016, 2016-2017, and 2017-2018 school years.  Id. at ¶ 174.  According to Plaintiff, beginning in 2019 through 2022, he became very outspoken as chapter leader.  Id. at ¶ 19.  In connection with his union duties, Plaintiff complained about irregular staffing situations, student

---

[1] This statement of facts is derived from the allegations in the Complaint (ECF Dkt. No. 1) which are assumed to be true for purposes of this motion to dismiss only.  The exhibits referred to herein are annexed to the Declaration of Karen K. Rhau dated November 3, 2022 ("Rhau Decl.") accompanying this memorandum of law.

Individualized Education Plan ("IEP") noncompliance, mismanagement of the school, health and safety violations and even miscalculation of payments owed to teachers.  Id. at ¶ 19.

On December 4, 2021, Plaintiff was reassigned from his duties at I.S. 303 and had to report to 100 Gold Street in Manhattan.  Id. at ¶ 20.  Plaintiff requested information concerning his reassignment and on March 21, 2022, pursuant to a FOIL request, learned that since September 2021, he had been the subject of seven Office of Special investigation ("OSI") cases initiated by the school administration.  Id. at ¶ ¶ 22- 23.

Plaintiff claims that upon receipt of this information he realized that the dates he filed grievances with his union against the school administration, "closely coincided" with dates of OSI investigations against Plaintiff.  Id. at ¶ 19, 27.  As an example, Plaintiff notes that on November 5, 2020, he filed an operational complaint regarding remote class size averages, which he claimed were in excess of the numbers of students allowed in a remote class.  Id. at ¶ 28.  On April 7, 2021, Plaintiff filed an operational complaint alleging that the type of instruction Defendant Amador required teachers to provide during the COVID-19 pandemic was in violation of a UFT-DOE agreement.  Id. at ¶ 29.  Plaintiff claims that Defendants retaliated against him on May 3, 2021, when he was "subjected to an OSI investigation" filed by the administration.  Id. at ¶ 30.  On May 14, 2021, Plaintiff also claims that he received a rating of "Developing" in observation reports from Defendant Amador, and another rating of "Developing" from Defendant Houston on June 29, 2021.  Id. at ¶ 30.  Plaintiff was also denied preferences for classes for the 2021-2022 school year in September of 2021.  Id. at ¶ 30.  Plaintiff, however, filed a grievance about the denial of his preferences which resulted in a change to his schedule. Id. at ¶ 30.

Plaintiff also filed an operational complaint on October 21, 2021 concerning the alleged lack of protocols and unsafe conditions in the school, and he filed an operational complaint on October 24, 2021, regarding physical education teachers creating lesson plans for certain grades.  Id. at ¶ 31.  According to Plaintiff, on October 26, 2021, Defendant Houston made a report to the Special Commissioner of Investigation ("SCI"), which was referred to OSI on November 24, 2021.  This report concerned Defendant Houston allegedly observing Plaintiff sleeping during afterschool time dedicated to parent engagement.  Id. at ¶ 32.  Ultimately, Houston gave plaintiff a disciplinary letter dated May 25, 2021, that Plaintiff claims was retaliatory.  Plaintiff states this is the first disciplinary letter he received at this school  Id. at ¶ 32.

On December 9, 2021, after Plaintiff was reassigned from I.S. 303, he filed an operational complaint against the school on behalf of teachers who were also mentors and who were not being paid for their work.  Id. at ¶ 34.  On January 13, 2022, Plaintiff filed an additional complaint about Principal Amador allegedly refusing to pay teachers per session pay.  Id. at ¶ 35.  On February 10, 2022, Plaintiff filed another complaint on behalf of the teachers who were not being paid for certain work.  Id. at ¶ 37.  Plaintiff received an SCI investigatory report on April 6, 2022, which substantiated his failure to supervise students.  Id. at ¶ 39.  The SCI report did not include any dates of when the allegations were made or investigated.  Id.  Plaintiff also asserts that he was the subject of OSI investigations on April 12, 2022 and November 15, 2022.  Id. at ¶ 33, 38.  Plaintiff also alleges that on an unspecified date Houston complained to OSI about Plaintiff being late to a remote class.  Id. at ¶ 40.  Similarly, Plaintiff claims that there is one outstanding OSI investigation and two Office of Equal Employment Opportunity ("OEEO") investigations pending against Plaintiff, however Plaintiff does not identify when the complaints were filed or by whom.  Id. at ¶ 41.  On June 13, 2022, Plaintiff alleges that he was not selected

4

to work at the school during the summertime although he is the most senior physical education teacher within I.S. 303.  Id. at ¶ 42.  Plaintiff also claims Defendant Amador harbors "anti-union animus" as purportedly evidenced by Amador's October 6, 2021 statement "the UFT gets its say, not its way."  Id.  at ¶ 47.

**B.     Plaintiff's Alleged Hostile Work Environment on the Basis of Age**

Plaintiff asserts that he was subjected to a hostile work environment by Defendants on the basis of age.  According to Plaintiff, he was treated less well than Egzon Gjonbalaj, a younger substitute teacher who often covered physical education classes within the school.  Mr. Gjonbalaj allegedly was not given poor disciplinary ratings or not subjected to as many investigations as Plaintiff.  Id. at ¶ 50.  Nor was Mr. Gjonbalaj given as many disciplinary letters to file as Plaintiff.  Id.  Also, on June 15, 2022, Plaintiff noticed that Mr. Gjonbalaj was listed as a Physical Education teacher on the school's "excessing seniority list", while Plaintiff was not on the roster at all.  Id. at ¶ 51.  Plaintiff believes that the poor ratings, disciplinary letters to file and disciplinary investigations, which led to his removal from the school, were done to replace him with a younger teacher.  Id. at ¶ 52.  As a result of Plaintiff's reassignment, he is also not permitted to work at I.S. 303's afterschool program and other opportunities.  Id. at ¶ 54.

Plaintiff commenced this action on September 6, 2022.  See ECF Dkt. 1.

<u>**ARGUMENT**</u>

**POINT I**

**PLAINTIFF'S   STATE   AND   CITY   LAW
CLAIMS    MUST    BE    DISMISSED    FOR
<u>FAILING TO FILE A NOTICE OF CLAIM.</u>**

Plaintiff failed to file a notice of claim against Defendant BOE, and the Complaint is devoid of any allegation that he has done so, as required under New York Education Law

§3813(1).  See N.Y. Educ. Law § 3813(1); See Ochoa v. N.Y.C. Dep't of Educ., No. 20-CV-9014 (ALC), 2021 U.S. Dist. LEXIS 224901, at *5 (S.D.N.Y. Nov. 22, 2021); Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367, 373 (2007).  Accordingly, Plaintiff's SHRL and CHRL claims in this lawsuit against the BOE must be dismissed.  See Freud v NY City Dept. of Educ., No. 1:21-cv-2281 (MKV), 2022 US Dist. LEXIS 54353, *15 (S.D.N.Y. Mar. 25, 2022) (dismissing state and city law claims due to plaintiff's failure to file a notice of claim).  A late notice of claim would also not salvage Plaintiff's claims since it must be filed no later than one year after the cause of action accrues.  See Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d at 371.

## POINT II

### PLAINTIFF'S SHRL AND CHRL CLAIMS ARE TIME BARRED IN PART.

To the extent that Plaintiff's SHRL and CHRL claims against the BOE are based upon acts that occurred prior to September 6, 2021, those claims are time-barred.  There is a one year statute of limitations for discrimination claims filed against the BOE.  See N.Y. Educ. Law §3813(2-b); Amorosi, 9 N.Y.3d at 373.  Plaintiff filed the instant action on September 6, 2022, and therefore all claims arising from acts prior to September 6, 2021 are time-barred, and should be dismissed.  As such, this includes Plaintiff's ratings of "Developing" in May and June of 2021.  See ECF Dkt. No. 1 at ¶ 30.

## POINT III

### PLAINTIFF'S SHRL AND CHRL CLAIMS ARE BARRED BY THE ELECTION OF REMEDIES DOCTRINE.

Plaintiff's SHRL and CHRL claims are barred in this action because he filed a complaint with the SDHR regarding those same claims.  There is no allegation in the complaint

6

that Plaintiff's case with the SDHR is closed.  A plaintiff who wishes to bring a discrimination claim against his employer may elect to either bring it before the New York State Division of Human Rights ("SDHR") for a probable cause determination, or the United States District Court, but not both.  See Williams v. City of N.Y., 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (citing Moodie v. Fed Reserve Bank of New York, 58 F.3d 879, 882-83 (2d Cir. 1995)).  A plaintiff is precluded under the election of remedies doctrine from re-litigating the same claim based on the same underlying facts in state or federal court.  Id.  Not only is a court precluded from hearing the same claims, but courts are also barred from hearing issues from the SDHR complaint that are similar to the issues in the federal complaint.  See Luna v NYC Taxi & Limousine Commn., No. 21-CV-1408 (DG) (PK), 2022 U.S. Dist. LEXIS 161704, at *26 (E.D.N.Y. Sept. 7, 2022) ("[A]s long as there is a sufficient identity of issue[s] between the claims a plaintiff pursued before the NYSHRL or NYCCHR, and those he alleges in a federal complaint, then the election of remedies doctrine precludes courts from adjudicating those federal claims.").

Here, Plaintiff's age discrimination claims in the instant federal complaint mirror the allegations he filed with the SDHR on June 23, 2022.  See Caggiano SDHR Charge No. 10219722, annexed as Exhibit A to the Rhau Decl.  Plaintiff alleged in his SDHR filing that Defendant BOE discriminated against him because of his age.  Plaintiff also checked off boxes indicating that Defendant BOE harassed/intimidated him, demoted him, gave him a disciplinary notice, and gave him a negative performance review, all on account of his age.  Id.  In the instant petition, Plaintiff makes similar allegations in that the age discrimination he endured was in the form of investigations, disciplinary letters to file,  and poor ratings.  See ECF Dkt. No. 1 at ¶ 52. According to Plaintiff, in the instant petition, he is being subjected to a hostile work environment based on his age.  Id. at ¶¶ 62-75.

Because Plaintiff previously filed an administrative complaint with the SDHR, Plaintiff elected an administrative remedy and is precluded from re-litigating his SHRL and CHRL claims in this forum.  Plaintiff cannot circumvent the election of remedies bar by altering the factual claims asserted or the legal theories under which he now seeks to recover in this Court.  It is well-settled that the election of remedies bars all claims that arise out of the course of conduct that was the basis for the prior administrative charge even if they had not been asserted in the administrative proceeding.  See Carroll v. U.P.S.,No. 00-7037, 2000 U.S. App. LEXIS 21268, at *8 (2d Cir. 2000) ("Attempts to recover for the same injuries under slightly differen[t] labels are subject to dismissal"); Coppedge v. New York City Sales, Inc., No. 10 Cv. 6449 (BSJ)(JLC) 2011 U.S. Dist. LEXIS 104231, at *7 (S.D.N.Y. 2011) ("[t]he election-of-remedies bar is not limited to the precise claims brought in the administrative proceeding, but extends to all claims arising out of the same events") (citation omitted); Philbert v City of NY, No. 21 Civ. 3119 (PAE), 2022 US Dist LEXIS 3997, at *25 (S.D.N.Y. Jan. 7, 2022) ("Thus, the bar applies as long as 'substantially the same facts are involved'; the facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies").  Additionally, just because the federal complaint names additional defendants, specifically Amador, Houston and Rabinowitz, that does not prevent the application of the election of remedies doctrine.  See Luna, 2022 U.S. Dist. LEXIS 161704, at *28 ("[E]ven though the complaint names additional parties, because the incidents are identical, this Court lacks jurisdiction over the Plaintiff's NYSHRL claims against al the Defendants.") (citing Benson v N. Shore-Long Is. Jewish Health Sys., 482 F Supp 2d 320, 326 (E.D.N.Y. 2007)).  Accordingly, Plaintiff's SHRL and CHRL claims should be dismissed with prejudice.

8

## POINT IV

### PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT RABINOWITZ.

Defendant Rabinowitz must be dismissed from the action.  "When a complaint names defendants in the caption but makes no substantive allegations against them in the body of the pleading, the complaint does not state a claim against these defendants."  Mitchell v. Macy's, Inc., No. 17 CV 1485 (AT) (SN), 2018 U.S. Dist. LEXIS 165613, at *16 (S.D.N.Y. Sept. 25, 2018), (citing Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 251 (S.D.N.Y. 2009)).  Here, there are no substantive allegations against Defendant Rabinowitz in the Complaint.  The only reference to Rabinowitz is Plaintiff's  statement that his professional relationship with Rabinowitz was at some point "very strong."  See ECF Dkt. No. 1 at ¶ 15.  As there are no substantive allegations against Defendant Rabinowitz, he must be dismissed from this action.

## POINT V

### PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1983.

**A.    Plaintiff's 42 U.S.C. § 1983 Retaliation Claim Based On The First Amendment Fails**

   **(i)    Plaintiff's Speech is Unprotected**

Plaintiff's retaliation claim fails because he has not engaged in protected speech, and nor does he establish a causal connection between his  speech and alleged adverse actions. To make out a "prima facie case of First Amendment retaliation, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Shara v Maine-Endwell Cent. Sch. Dist., 46 F.4th 77, 82 (2d Cir. 2022).  In

9

determining the first prong of the test, courts will look at whether the employee spoke as a citizen, rather than as an employee, and also whether the employee spoke on a matter of public concern.  See id at 82.  Union-related speech can address a matter of public concern, however, that is not always necessarily the case; courts will still analyze the context in which the speech is made.  See id at 85.  To determine whether an employee spoke as a citizen, courts will look at whether the "employee's speech falls outside of his official responsibilities; second . . . 'whether a civilian analogue' to the employee's speech exists."  Id. at 83.  In order to determine whether a public employee speaks pursuant to his official duties, courts will look at the nature of plaintiff's responsibilities and plaintiff's speech and the relationship between the two.  See id.

In the instant case, during the relevant time period, Plaintiff was a physical education teacher at I.S. 303.  Not only was Plaintiff a physical education teacher, but he voluntarily took on various roles within the school such as working with the CHAMPS after-school program, and facilitating both the Kiwanis Builders club and the NYPD Explorers program at the school.  See ECF Dkt. No. 1 at ¶¶ 16-18.  All of these various roles suggests Plaintiff's personal motivations, and also demonstrates the specialized knowledge he likely possessed concerning staff/faculty issues and school management.  Plaintiff's complaints concerning teacher's pay, alleged staffing and mismanagement issues of the school, the type of instruction teachers were to provide according to the UFT-DOE agreement, schedule preferences, and creating lesson plans as a physical education teacher, are all "part and parcel of [Plaintiff's] concerns about his ability to properly execute his duties."  Shara 46 F.4th at 86.  As a BOE physical education teacher at P.S. 303, Plaintiff has a personal interest in initiating complaints regarding teacher's pay, schedule preferences, instruction issues, and whether or not physical education teachers should create lesson plans for certain grades.  They would all affect

his ability to "properly execute" his duties and all fall within the scope of his official duty as a BOE teacher at I.S. 303.  See id. at 83.  In fact, Plaintiff's speech in effect stemmed from his intimate knowledge of the school, which "owed its existence to Plaintiff's professional responsibilities."  Micillo v NY City Dept. of Educ., No. 14 Civ. 00943 (LAK) (GWG), 2015 U.S. Dist. LEXIS 12321, at *11-12 (S.D.N.Y. Feb. 2, 2015) ("restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.").  Any possible mismanagement of the school or staffing issues would only come by virtue of Plaintiff's responsibilities as a teacher at I.S. 303. In fact, most of Plaintiff's operational complaints through the union involved teacher's pay, further supporting the fact that these concerns would affect his ability to properly execute his duties.  See ECF Dkt. No. 1 at ¶¶ 19, 29, 34, 36, 37.

The fact that Plaintiff's speech was "confined to internal channels" further supports the fact that Plaintiff was speaking as an employee, and not a citizen.  Micillo, 2015 U.S. Dist. LEXIS 12321 at 14; Weintraub v Bd. of Educ., 593 F3d 196, 203 (2d Cir. 2010) ("Our conclusion that Weintraub spoke pursuant to his job duties is supported by the fact that his speech ultimately took the form of an employee grievance, for which there is no relevant citizen analogue."); see also Massaro v NY City Dept. of Educ., 481 F App'x 653, 656 (2d Cir. 2012) (concluding Plaintiff spoke as an employee when her speech concerned the safety and cleanliness of her work environment and her use of sick leave, all of which were pursuant to her official duties).  Plaintiff's speech lacked any "civilian analogue"; rather than complaining to the media or even an elected official, Plaintiff merely filed grievances with his union.  See ECF Dkt. No. 1 at ¶ 27.  Plaintiff filed union grievances – a procedure to which he has exclusive access as a member of his union.  See Micillo, 2015 U.S. Dist. LEXIS 12321 at 16. Given the direct

connection between his complaint to his job duties and the absence of a civilian analogue, Plaintiff's speech cannot be protected because Plaintiff was speaking as a public employee.

Even if he were found to be speaking as a private citizen, his speech would be unprotected because it is not a matter of public concern.  As argued *supra*, Plaintiff's grievances concerned various issues of which he had a strong personal interest i.e. teacher's pay, type of instruction to facilitate, and having to create lesson plans for grades 6, 7, 8 as a physical education teacher, grievances that Plaintiff made through his union.  Plaintiff's type of complaints and the manner of which he complained further support the fact that Plaintiff's speech is not a matter of public concern.  See Shara, 46 F. 4th at 84-85 ("[I]nternal workplace complaints—especially those 'filed with an employer using an internal grievance procedure' rather than through a channel available to the public are rarely made 'to communicate to the public or to advance a political or social point of view beyond the employment context.'").  Even if Plaintiff's complaints were on behalf of the other union members, his speech is still not protected as discussions concerning teacher's pay, the creation of lesson plans and the types of teacher's instruction that should be used in the classroom, are "within the bounds of his employment and are 'topics that are indispensable prerequisites to effective performance of [plaintiff's] primary employment responsibility."  Payson v Bd. of Educ. of Mount Pleasant Cottage Sch., No. 14 Civ. 9696 (JCM), 2017 US Dist LEXIS 154296, at *49, 55 (S.D.N.Y. Sept. 20, 2017).  Plaintiff's complaint fails both prongs of the first element of his prima facie claim, and therefore, should be dismissed.

### (ii)     Lack of Adverse Employment Action

Plaintiff also cannot establish a retaliation claim because he fails to show the Defendants took an adverse action against him.  In the context of a First Amendment retaliation claim, an adverse employment action is retaliatory conduct that would deter an individual of

ordinary firmness from exercising [his] free speech rights.  See Collymore v New York, 767 F

App'x 42, 47 (2d Cir. 2019).  Plaintiff did not become aware of any of the OSI investigations

until May 21, 2022. See ECF Dkt. No. 1 at ¶ 23.  By that point, Plaintiff had been exercising his

free speech rights (i.e., engaging in his union activity) for at least three years.  Aside from the

disciplinary letter he received May 25, 2022 and the substantiated report in April of 2022, there

are no other allegations indicating the results of these investigations of which Plaintiff

complains.  Id. ¶ at 32, 39.  Clearly, there was no deleterious effect on Plaintiff, as he continued

to be chapter leader and the complaint is devoid of any alleged that Plaintiff was demoted,

terminated, or received less pay following the conclusion of the OSI investigations.  The

majority of his complaints were filed in 2021 and in early 2022.  The fact that Plaintiff continued

to file his operational complaints indicates that Plaintiff was not dissuaded in any way from

exercising his First Amendment rights.

        Also, Plaintiff's ratings of "Developing" in May and June of 2021 are not "more

than de minimus" and therefore Plaintiff's retaliation claim fails for failing to allege retaliatory

conduct that would deter "a person  of ordinary firmness" from exercising their free speech

rights.  Collymore, 767 F App'x at 47.

    **(iii)    Lack of A Causal Connection**

        Assuming *arguendo* that Plaintiff's union grievances  are considered protected

speech, his claim nevertheless fails because there is no causal connection.  Plaintiff cannot show

retaliatory animus or that the protected activity was followed closely by an adverse action.  See

Robinson v NY City Dept. of Educ., No. 20-CV-8175 (VSB), 2021 US Dist. LEXIS 181134, at

*19 (S.D.N.Y. Sept. 22, 2021).  For nearly all of his complaints to the union, Plaintiff does not

allege that  Defendants were aware of his grievances *before* filing any complaints with OSI.

Plaintiff provides no support for his assertions that Defendants initiated complaints with OSI

specifically because of his grievances with the school.  See Pavone v Puglisi, 353 F App'x 622, 625 (2d Cir. 2009) ("Although a causal connection between an adverse action and protected speech may be indirectly established by showing that protected activity was followed closely in time by the adverse action . . . a plaintiff must still allege that defendants were aware of the protected activity.").  Plaintiff alleges that he filed an operational complaint in April 2021,  and then became the subject of an OSI investigation on May 3, 2021.  See ECF Dkt. No. 1 at ¶ 29-30.  Plaintiff alleges that after his complaints he received ratings of "Developing" on May 14, 2021 and June 29, 2021.  Id.  But Plaintiff does not allege Defendants knew about this complaint on April 7, 2021.  Similarly, Plaintiff alleged that on October 21, 2021 and October 24, 2021, he made operational complaints and that a mere two days later,  Defendant Houston made a report to SCI against Plaintiff.  Id. at ¶¶ 31-32.  Plaintiff does not allege whether Defendant Houston was ever aware of the aforementioned two operational complaints made by Plaintiff.  Without knowledge of Plaintiff's complaints, it cannot be inferred that any of the Defendants' subsequent actions were motived, even in part, by retaliatory animus.  See Jeune v. Crew, No. 16 Civ. 1107, 2017 U.S. Dist. LEXIS 161739, at *41 (E.D.N.Y. Sept. 29, 2017) (dismissing the plaintiff's claim of protected speech when he submitted a complaint to an outside entity because the plaintiff never alleged the defendants were aware of his complaint).

Plaintiff's retaliation claim also fails on the causation prong of the analysis because the length of time between when Plaintiff became vocal and alleged retaliatory acts by the Defendants are too attenuated to establish causation.  Plaintiff alleges that he became vocal as a union Chapter leader in 2019.  See ECF Dkt. No. 1 at ¶ 19.  However, the investigations initiated against Plaintiff began in September 2021, two years later.  Id. at 23.  The alleged adverse actions of receiving ratings of "Developing" began in May of 2021.  Id. at ¶ 30.  The

first disciplinary letter Plaintiff received at I.S. 303 was May 25, 2022.  Id. at ¶ 32.   In fact, there

were no alleged adverse actions occurring in 2019 or 2020.  District courts within the Second

Circuit have held two or three months between protected activities and alleged retaliatory actions

are too long to support an inference of causation.  See Robinson, 2021 U.S. Dist. LEXIS 181134

at * 21 ("As such, a period of over ten months . . . does not allow for an inference of causation.")

(citing Raymond v. City, of N.Y., 317 F. Supp. 3d 746, 769 (S.D.N.Y. 2018)).   Consequently,

Plaintiff's retaliation claim fails.

**B.     Plaintiff's Claims Against The BOE Under 42 U.S.C. § 1983 Must Be Dismissed For Failure To Plead A Municipal Policy Or Practice**

Plaintiff fails to plausibly plead a claim of municipal liability against Defendant

BOE under § 1983.  A municipality cannot be led liable under § 1983 based on a respondeat

superior theory.   Missel v County of Monroe, 351 F. App'x 543, 545 (2d Cir 2009).   A

municipality can be held liable if the Plaintiff can show that: "(1) an official policy or custom

that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Rivera v City

of NY, No. 1:16-cv-9709-GHW, 2019 US Dist. LEXIS 8601, at *21 (S.D.N.Y. Jan. 17, 2019).

Plaintiff must show that the "policies or customs that were sanctioned by the municipality led to

the alleged constitutional violation."  Missel, 351 F. App'x at 545.  An official policy or custom

is demonstrated by any of the following: "(1) a formal policy officially endorsed by the

municipality; (2) actions or decisions made by municipal officials with decision-making

authority; (3) a practice so persistent and widespread that it constitutes a custom of which

policymakers must have been aware; or (4) a failure by policymakers to properly train or

supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the

rights of the plaintiff and others encountering those subordinates."  Arroyo-Horne v City of NY,

No. 16-CV-03857 (MKB), 2018 U.S. Dist. LEXIS 151183, at *58 (E.D.N.Y. Sep. 5, 2018).

Thus, in order to hold the BOE liable for his claims, Plaintiff must plead and prove that his constitutional rights were violated by a municipal employee acting pursuant to a policy, practice or custom of the municipality.

At the outset, for the reasons set forth in V(A), *supra*, plaintiff cannot establish that his First Amendment constitutional rights were violated.   His claim also fails because he has not alleged that either of the individually named Defendants were municipal officials with decision-making authority.   He has not alleged that there was a practice facilitated by the BOE that was so persistent or widespread that it constitutes a custom of which policymakers must have been aware.   And Plaintiff has not alleged that there was a failure by the individually named Defendants or any other alleged policymaker to properly train or supervise their subordinates, which showed a deliberate indifference to the rights of Plaintiff.   In fact, Plaintiff fails to even identify who the "policymakers' are and how they condoned alleged retaliatory acts against him. For the foregoing reasons, Plaintiff's <u>Monell</u> claim fails.   <u>Monell v Dept. of Social Servs.</u>, 436 U.S. 658, 694 (1978).

## C.   The Individually Named Defendants are Entitled to Qualified Immunity Regarding Plaintiff's First Amendment Retaliation Claim

The individually named Defendants in the instant case are entitled to qualified immunity.   For the reasons stated above, it was not "beyond debate" that Amador, Houston, and Rabinowitz were violating Plaintiff's established rights. <u>Lane v. Franks</u>, 573 U.S. 228, 246 (2014) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011).   Therefore, they are entitled to qualified immunity and should be dismissed from the action.   "A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights."

McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 277 (2d Cir. 1999). "A right is clearly established if the law (1) was defined with reasonable clarity, (2) has been affirmed by the Supreme Court or the Second Circuit[,] and (3) where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law." Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012) (internal quotation omitted).

The Supreme Court has emphasized that the qualified immunity analysis should not "define clearly established law at a high level of generality." Al-Kidd, 563 U.S. at 742. Qualified immunity precludes individual liability when "reasonably competent" officials could disagree about whether the conduct at issue would violate a clearly established right. Cartier v. Lussier, 955 F.2d 841, 846 (2d Cir. 1992).  To overcome qualified immunity, the alleged right must have been clearly established by Second Circuit or Supreme Court precedent at the time of the allegedly illegal action.  Montero v City of Yonkers, 890 F.3d 386, 402 (2d Cir. 2018).

The Second Circuit has reiterated this principle in First Amendment retaliation cases.  Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999) ("The relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech."); see also Giacalone v. Abrams, 850 F.2d 79, 85 (2d Cir. 1988) (district court's determination that "a public employee retains First Amendment rights and . . . may not generally be discharged for the exercise of those rights" is "too general to be controlling in the qualified immunity inquiry").

Qualified immunity can be granted on a motion to dismiss where "the question is purely the state of the law at the time of a defendant's allegedly tortious conduct." Birch v. City of New York, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016), aff'd on other grounds, 675 Fed. Appx.

43 (2d Cir. 2017). The Second Circuit held in Montero that the defendants in that case were shielded from liability based on qualified immunity since it was not "beyond debate" that at the time the defendants engaged in retaliatory acts they were knowingly violating the law.  See Montero, 890 F.3d at 403. Furthermore, union activities does not give an individual blanket First Amendment protection.  Montero, 890 F.3d at 403.

Here, the individual defendants are entitled to qualified immunity "insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Plaintiff alleges that he received a poor rating, disciplinary letters to file,  and was subjected to investigations, and reassignment for exercising his First Amendment right to freedom of speech. See ECF Dkt. No. 1 at ¶¶ 52, 54, 62-75.  Plaintiff claims he was disciplined because of his alleged protected speech and was thus subjected to First Amendment retaliation.  The analysis above in Point V(A) demonstrates that a reasonably competent BOE staff official would not have been on notice that plaintiff's speech was a matter of public concern.  Nor should they have known that initiating complaints with OSI after reasonable suspicion of Plaintiff's misconduct might have violated his rights.  See Agosto v NY City Dept. of Educ., 982 F3d 86, 97 (2d Cir. 2020).  Like the plaintiff in Agosto, Plaintiff's speech—motivated by either personal interest or made because of his advocacy regarding other employee's internal employment disputes-—cannot clearly be characterized as a matter of public concern, and so the Defendants here would not have been on notice that their actions violated an alleged constitutional right.  See id. Therefore, Plaintiff's claims against the individual Defendants should be dismissed they are entitled to qualified immunity in their individual capacities.

## POINT VI

### PLAINTIFF FAILS TO ALLEGE A HOSTILE WORK ENVIRONMENT CLAIM UNDER THE SHRL OR CHRL

Plaintiff fails to allege a hostile work environment claim based on age under the SHRL and CHRL.  On October 11, 2019, the New York legislature amended the SHRL to remove the "severe and pervasive" standard.  See Tortorici v. Bus-Tev, LLC, No. 17-cv-7507 (PAC) (KHP), 2021 U.S. Dist. LEXIS 120627, at *30 (S.D.N.Y. June 28, 2021) (citing N.Y. Exec. Law § 300)).  Under this new standard, plaintiffs must show that they were subject to "inferior terms, conditions, or privileges of employment because of the individual's membership in or more protected categories."  Id.  Even under the new standard, it is "axiomatic that a hostile work environment claim is only actionable when it occurs because of an employee's [age], or other protected characteristic.  See Carrington v. New York City Human Res. Admin., No. 19 Civ. 10301, 2020 U.S. Dist. LEXIS 83838, at 15* (S.D.N.Y. May 12, 2020).  Plaintiff attempts to compare himself to an allegedly younger employee by the name Egzon Gjonbalaj, however he provides no facts illustrating how Mr. Gjonbalaj was treated preferably by the Defendants based on age.  Critically, Plaintiff does not even identify the age of his comparator, which is fatal to his claim.  See Williams v Victoria's Secret, No. 15 Civ. 4715 (PUG) (JLC), 2017 U.S. Dist. LEXIS 45813, at *21 (S.D.N.Y. Mar. 28, 2017) ("Although [Plaintiff] alleges that [he] was replaced with a younger employee, this, without more, is not enough to survive a motion to dismiss.") Plaintiff never alleges Defendants made any references to his age whatsoever, or that Defendants treated others who were Plaintiff's same age in a similar manner as Plaintiff.  In sum, Plaintiff's complaint is devoid of any facts showing that he was subjected to inferior terms, conditions and employment because of his age.

Additionally, Plaintiff's allegations fail to plausibly plead that he was subjected to a hostile work environment on the basis of his age under the CHRL.   Under the CHRL, a plaintiff alleging hostile work environment must plead that they were treated less well than other employees because of a protected status or that discrimination was a motivating factor for the defendant's conduct, which Plaintiff fails to do.   EEOC v. Bloomberg L.P., 967 F. Supp. 2d 816, 837 (S.D.N.Y. 2013); Williams v. New York City Housing Auth., 61 A.D.3d 62, 79 (1st Dept. 2009).   Plaintiff's sole basis for asserting his hostile work environment claims is because he is 50 years old, he received a poor rating, was subject to investigations, and received a disciplinary letter to file, whereas Mr. Gjonbalaj, who is allegedly younger than Plaintiff did not receive poor ratings, was not subject to investigations and nor did he receive a disciplinary letter to file. Plaintiff has no provided no other information upon which this Court could infer age based discrimination.   This conclusory assertion is insufficient to make out a claim under the SHRL or CHRL. See Mauro v NY City Dept. of Educ., No. 19-CV-04372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379, at *17 (S.D.N.Y. Apr. 29, 2020) ("[B]ald statements—without any supporting facts—are too conclusory to permit an inference of discriminatory animus.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss the Complaint relating to the foregoing claims, together with such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              November 3, 2022

                         **HON. SYLVIA O. HINDS-RADIX**
                         Corporation Counsel of the
                           City of New York
                         Attorney for Defendants
                         100 Church Street, Room 2-146
                         New York, New York 10007
                         (212) 356-2475
                         krhau@law.nyc.gov

                         By:      *Karen K. Rhau*
                                  Karen K. Rhau
                                  Assistant Corporation Counsel

Danielle M. Dandrige,
Karen K. Rhau
     Of Counsel.

21